# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
February 26, 2013 Session

## DAMEION NOLAN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 91847      Bob R. McGee, Judge**

---

**No. E2012-00429-CCA-R3-PC - Filed June 28, 2013**

---

The petitioner, Dameion Nolan, filed in the Knox County Criminal Court a petition for post-conviction relief, alleging that his trial counsel was ineffective by failing to explain that he would be required to remain on the sexual offender registry for life as a result of his guilty pleas to five counts of especially aggravated kidnapping, three counts of aggravated rape, two counts of aggravated robbery, and one count of aggravated burglary and the resulting effective twenty-five-year sentence. The petitioner also contended that his guilty pleas were not knowingly and voluntarily entered. The post-conviction court denied the petition, and the petitioner timely appealed. In addition to his ineffective assistance claim, the petitioner maintains that the post-conviction court erred by allowing trial counsel to remain in the courtroom during the proceedings. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Dameion Nolan.

Robert E. Cooper, Jr., Attorney General and Reporter, Deshae Dulany Faughn, Assistant Attorney General; Randall E. Nichols, District Attorney General, and Phil Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

At the July 28, 2008, guilty plea hearing, the State explained to the trial court the

factual basis for the pleas. The State said that shortly after 1:00 a.m. on June 3, 2007, the petitioner and his two codefendants, Shavon Page and Michael McMahan, entered the Knox County residence of the victims, W.P. and T.P.[1], by forcing open the rear, basement door of the residence. All three defendants, armed with handguns, went into the victims' bedroom where they were sleeping. As the victims began to awaken, one of the defendants "pistol whipped" W.P. At gunpoint, the defendants made T.P. remove her clothing and ordered both victims to lie down on the floor. The defendants bound the victims with belts and other items from the victims' bedroom. The defendants took the jewelry that was in the bedroom, removed T.P.'s wedding ring from her finger, and demanded to know where the victims kept their money. W.P. revealed that his credit cards were in his downstairs office. After two defendants took W.P. downstairs, he gave them the cards and the pin number for one of the cards. The two defendants put W.P.'s collection of state quarters, which had an approximate value of $3,000, in one of W.P.'s camera bags and took the bag with them.

While the two defendants and W.P. were downstairs, the defendant with T.P. forced her at gunpoint to perform fellatio on him. When the two defendants and W.P. returned to the bedroom, the defendants made W.P. lie on the floor and watch as they forced T.P. to perform fellatio on all three defendants. The petitioner's co-defendants also attempted to vaginally rape T.P. T.P. became nauseous after the rapes, and the defendants threatened to shoot her if she vomited. The defendants took T.P. downstairs at gunpoint and made her turn off the power to the residence's surveillance camera. During the incident, the defendants repeatedly threatened that if the victims "move[d] or talk[ed], . . .[the defendants] would blow [the victims'] heads off."

Shortly before 4:00 a.m., the defendants left the residence by a patio door and got into an awaiting car. At 4:04 a.m., a security camera at the SunTrust Bank on Cedar Bluff Road recorded the petitioner in a car with at least two other individuals, using the victim's ATM card to withdraw $500 in cash.

Greg Faulkner of the Knox County Sheriff's Office later spoke with the petitioner, and the petitioner revealed the names of his co-defendants, Page and McMahan. Police searched the car the petitioner was driving and found the victims' jewelry in the glove compartment. On June 5, 2007, McMahan's mother, Tracie Bennet, went to Charlie's Pawn Shop on Kingston Pike, where she pawned a diamond heart-shaped pendant that belonged to T.P. DNA testing of samples from the defendants were compared with swabs taken from the victim during a rape kit, revealing sperm from Page and McMahan.

The petitioner entered guilty pleas to five counts of especially aggravated kidnapping

---

[1]It is the policy of this court to refer to the victim's of sexual crimes by their initials.

and three counts of aggravated rape, Class A felonies, and for each conviction received a twenty-five-year sentence to be served at one hundred percent. The petitioner also pled guilty to two counts of aggravated robbery, a Class B felony, and was sentenced as a Range I, standard offender to twelve years, with release eligibility after serving thirty percent of the sentence in confinement. Finally, the petitioner pled guilty to one count of aggravated burglary, a Class C felony, and received a six-year sentence as a Range I, standard offender, with release eligibility after serving thirty percent of the sentence. The trial court ordered the sentences to be served concurrently, for a total effective sentence of twenty-five years at one hundred percent.

On June 4, 2009, the petitioner, acting pro se, filed a petition for post-conviction relief, and amended the petition on June 26, 2009. Thereafter, counsel was appointed, and four additional amended petitions were filed. On January 27, 2012, the post-conviction court held an evidentiary hearing on the petitions.

Before the petitioner testified at the hearing, post-conviction counsel asked that trial counsel be excluded from the courtroom during the petitioner's testimony based upon Tennessee Rule of Evidence 615, which governs the sequestration of witnesses. The State responded, "No, I'm asking him to stay. I think he's – he's the State's designated witness under the rule. He's the complained on lawyer, I think he's entitled to hear what the complaints are and respond to them." The post-conviction court overruled the petitioner's motion.

The twenty-two-year-old petitioner testified that he was seventeen years old when he was arrested. He said that he was never informed that he would be transferred from juvenile court to criminal court. He said that he did not want a preliminary hearing or transfer hearing in juvenile court because his main goal was to be released on bond.

The petitioner said that he met with trial counsel "[a] few times, a couple of times, maybe a handful or less than a handful of times" and that they discussed the facts of the case. During a meeting at the county jail on June 26, 2008, trial counsel advised the petitioner of a plea offer that would require him to serve twenty-five years in confinement. Counsel said that "due to some law or something," the petitioner would have to serve only seventeen years. The petitioner agreed to accept the plea. The petitioner asserted that trial counsel never advised the petitioner that he would be subject to community supervision for life or that he would be placed on the sexual offender registry.[2]

The petitioner said that his guilty plea hearing took place on June 28, 2008, and that

---

[2] See Tenn. Code Ann. §§ 39-13-524, 40-39-201

he signed the written plea agreement the same day. The written plea agreement did not include the provision that the petitioner was subject to community supervision for life or that he would be placed on the sexual offender registry.

The petitioner asserted that he would not have pled guilty had he known of the lifetime community supervision requirement. He had believed that after completing his term of incarceration, he "would be done with this case." The petitioner said that after his guilty pleas, he sent trial counsel a letter saying that he was not guilty of any of the charges and that he wanted to withdraw his guilty pleas.

On cross-examination, the petitioner acknowledged that he had been in juvenile court on two prior occasions. He said that he did not understand juvenile proceedings because "[n]o lawyer I ever had ever explained anything about none of my cases."

The petitioner said that after his arrest, he told the police of his involvement in the crime. He acknowledged that he knew the police had photographs of him using the victims' ATM card. Trial counsel told him that his co-defendants were not being offered a plea agreement and that as a condition of his pleas, he would be required to testify against them. Trial counsel said that the petitioner would receive a twenty-five-year sentence, of which he would serve seventeen years. The petitioner said that after he served seventeen years, he expected to "walk out of prison and not have to worry about anything else."

The petitioner stated that he met with trial counsel less than five times and that on one or two occasions, trial counsel brought an investigator to the meetings. Trial counsel never discussed whether the State's case against the petitioner was strong or weak. The petitioner maintained that counsel never mentioned that he would be subject to community supervision for life, asserting that the requirement "would have been a deal breaker." He learned of the requirement "some time in 2009" when, after arriving at the Tennessee Department of Correction, he looked at his judgments of conviction and saw a notation in the "special conditions" section that explained he was subject to lifetime community supervision following service of his sentences.

The petitioner acknowledged that he was not under the influence of drugs or alcohol at the guilty plea hearing and that he told the trial court he understood the proceedings and had no questions. The petitioner said that although he was innocent of the crimes, he followed trial counsel's advice and "just answer[ed] yes to the judge's questions."

Post-conviction counsel introduced as exhibits the original July 28, 2008 aggravated rape judgments of conviction and the October 16, 2008 corrected judgments of conviction. The original judgments of conviction did not provide for lifetime community supervision;

however, the corrected judgments reflect that the petitioner was subject to community supervision for life.

Trial counsel testified that after he was appointed to represent the petitioner, he hired a private investigator and began investigating the case. Counsel spoke with the petitioner and with members of the petitioner's family. Trial counsel believed he understood the facts of the case and was prepared for trial. Nevertheless, based upon information from the petitioner, counsel thought, given the petitioner's youth and the strength of the State's proof against him, it was in the petitioner's best interest to negotiate a plea agreement. Counsel thought they did not "have a very winnable strategy."

Trial counsel told the petitioner that the charges he faced were based upon his own acts and his criminal responsibility for the acts of his co-defendants. The petitioner did not "like that concept [of criminal responsibility,] but he seemed to understand it very clearly." Trial counsel told the petitioner that he might be able to earn up to fifteen percent reduction credits on his sentence but that the credits "would be determined by the prison not by the judge."

Trial counsel said that he had lengthy discussions with the petitioner regarding the community supervision for life required upon his plea to aggravated rape. The private investigator was present during one of the discussions. Counsel explained:

> I had been involved with another lawyer in town on several of these cases when the – when the Marcus Ward case was being argued before the ruling and that – the idea of letting the defendants know that this is going to happen to them is something that a whole bunch of us, myself included, really started hammering a couple of years before this even happened with [the petitioner] because we all kind of saw that this was – this could happen.

Trial counsel said that the petitioner was very young and faced multiple charges that, if he were convicted, could result in a lengthy sentence. The petitioner's main concern was how quickly he could be released from custody. Trial counsel advised the petitioner that after completing the twenty-five-year sentence associated with the plea agreement, he would be young enough to do things he wanted, such as traveling. Trial counsel said he told the petitioner, "You're going to serve your time and be done and then you're going to have to go see these people. And then if you move to a different state, you got to go talk to them, but it's not too bad. It's only a couple times a year that you go talk to th[ese] people."

Trial counsel said that due to an issue with the media, there was a "break" during the petitioner's guilty plea hearing. The petitioner was "annoyed" by the media coverage because he did not want to be known as "a snitch." Trial counsel thought that he and the petitioner discussed the community supervision for life requirement again during the break.

On cross-examination, trial counsel said that he could not recall whether he had seen the petitioner's corrected aggravated rape judgments. During his representation of the petitioner, he advised the petitioner of his rights. Counsel stated that he had liked the petitioner and had felt sorry for him. He did not think the trial court had improperly advised the petitioner during the guilty plea hearing, and counsel would have informed the petitioner if the court had provided misinformation. Counsel noted that he did not "correct" the trial court about the need to inform the petitioner about the supervision requirement because "[t]he Ward case hadn't come out and I had reviewed the lifetime community supervision with [the petitioner] already in the plea discussions." Counsel denied ever receiving a letter from the petitioner stating that he wanted to withdraw his guilty pleas.

At the conclusion of the post-conviction hearing, the post-conviction court said:

> The Court has some trouble with – when you think about it that is a fairly incredible notion that a man who was so concerned that he might get a much larger sentence, apparently, he had exposure upwards toward 75 years. And in order to avoid that kind of exposure, he would agree to a sentence to serve in prison 25 years at 100 percent but he would not have done it if he'd known he had to check in with somebody and let the State know about his whereabouts when he got out of prison. That that would just be a super imposition but 25 years in prison he could live with. There is something fairly odd about that line of thinking.

The post-conviction court accredited trial counsel's testimony that he advised the petitioner of the lifetime community supervision requirement. The court found that trial counsel thoroughly investigated the case, met with the petitioner several times, and advised the petitioner of the possible consequences of trial and of pleading guilty. The court said that even if the trial court failed to specifically warn the petitioner during the guilty plea hearing about the lifetime community supervision requirement, the petitioner had been advised of the requirement by counsel. Therefore, "it is classic harmless error." The post-conviction court concluded that counsel was not ineffective and that the petitioner's guilty pleas were knowingly and voluntarily entered. On appeal, the petitioner challenges this ruling. He also challenges the post-conviction court's denial of his motion to remove counsel from the

courtroom during the petitioner's testimony.

## II.  Analysis

### A.  Post-Conviction Claims

On appeal, the petitioner maintains that the post-conviction court erred by concluding that his trial counsel was not ineffective and that the petitioner's guilty pleas were knowingly and voluntarily entered.  The State responds that the post-conviction court correctly concluded that the petitioner failed to prove his post-conviction claims and that he is not entitled to relief.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence.  See Tenn. Code Ann. § 40-30-110(f).  "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'"  State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact.  See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997).  Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact.  See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).  We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct.  See Fields, 40 S.W.3d at 458.  However, we will review the post-conviction court's conclusions of law purely de novo.  Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases."  Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient

to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Generally,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969).  Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970).  In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Underlying the petitioner's assertion that his trial counsel was ineffective and that his

pleas were not knowingly and voluntarily entered is his complaint that trial counsel failed to advise him that he would be subject to community supervision for life after pleading guilty to aggravated rape. See Tenn. Code Ann. § 39-13-524(a). In support of his claims, the petitioner cites State v. Ward, 315 S.W.3d 461, 464 (Tenn. 2010), in which our supreme court examined the effect of a trial court's failure to advise a defendant during a guilty plea hearing of the consequences of being subject to community supervision for life. The court reiterated that for a guilty plea to be entered knowingly and voluntarily, a defendant must be aware of the "direct consequences" of the guilty plea and that "[t]he most obvious direct consequence of a conviction is the penalty to be imposed. It is, therefore, well-recognized that the defendant must be apprised of the sentence that he will be forced to serve as the result of his guilty plea and conviction." Id. at 474 (citation, internal quotations, and emphasis omitted). The court held that "the mandatory lifetime supervision requirement is an additional part of a defendant's sentence[; therefore,] the trial court is constitutionally required to inform the defendant of the supervision requirement as part of the plea colloquy." Ward, 315 S.W.3d at 474.

Our review of the transcript of the guilty plea hearing reveals that the trial court did not advise the petitioner that he would be subject to a lifetime of community supervision as a result of his guilty pleas to aggravated rape. Therefore, the trial court failed to advise the petitioner of the consequences of his guilty pleas. However, we note that this court has previously addressed this issue and concluded that "the holding in Ward is not to be applied retroactively in collateral proceedings such as petitions for post-conviction relief." State v. Joshua Jermaine Whitehead, No. E2012-00312-CCA-R3-CD, 2012 WL 4551345, at *5 (Tenn. Crim. App. at Knoxville, Oct. 3, 2012) (citing Derrick Brandon Bush v. State, No. M2011-02133-CCA-R3-PC, 2012 WL 2308280, at *10 (Tenn. Crim. App. at Nashville, June 15, 2012), perm. to appeal granted, (Tenn. Oct. 17, 2012)). The petitioner pled guilty on July 28, 2008; our supreme court's Ward decision was not filed until July 7, 2010. Thus, Ward was not applicable at the time the petitioner entered his guilty pleas.

In any event, regarding the appellant's claim of ineffective assistance of counsel, the post-conviction court specifically accredited trial counsel's testimony that he was aware the Ward case was pending and that he repeatedly and thoroughly advised the petitioner that because of his aggravated rape convictions, he would be subject to community supervision for life. Nothing preponderates against the trial court's finding. Thus, the petitioner has failed to show that counsel rendered deficient performance.

As to whether the trial court's failure to advise the petitioner about the consequences of his guilty pleas rendered the pleas unknowing and involuntary, our supreme court stated in Ward that such error is subject to harmless error review. 315 S.W.3d at 476. To save the conviction, the State must "prove[] that the error was harmless beyond a reasonable doubt."

Id. "If it can be shown that the defendant already knew what he was not advised, . . . the harmless nature of the error is classic.'" Id. (quoting State v. Neal, 810 S.W.2d 131, 139 (Tenn. 1991)). Again, the trial court explicitly accredited trial counsel's testimony that he advised the petitioner of the requirement of community supervision for life, and the evidence does not preponderate against this finding. Therefore, the State has established that the trial court's error was harmless beyond a reasonable doubt.

## B. Rule 615

The petitioner maintains that pursuant to Tennessee Rule of Evidence 615, the post-conviction court should have excluded trial counsel from the courtroom during the petitioner's testimony. The petitioner asserts that after hearing the petitioner's testimony, trial counsel "ha[d] ample motive to testify in such a way – truthful or not– that ma[de] him look better in the eyes of the finder of law and/or fact." Therefore, allowing trial counsel to remain in the courtroom "was nothing more than a means to bolster the testimony of [counsel] when he was called as a witness by the State of Tennessee, and to allow him to hear and prepare to overcome damaging testimony against him by the Petitioner." The State responds that the post-conviction court did not violate Rule 615 because "trial counsel's presence was essential to the presentation of the State's case."

The application of Tennessee Rule of Evidence 615, the rule of sequestration, "is within the sound discretion of the trial court." State v. Palmer, 108 S.W.3d 887, 898 (Tenn. Crim. App. 2002) (citing State v. Harris, 839 S.W.2d 54, 68 (Tenn. 1992)). Rule 615 provides that "[a]t the request of a party the court shall order witnesses . . . excluded at trial or other adjudicatory hearing. . . . The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness." Tenn. R. Evid. 615. However, "[t]his rule does not authorize exclusion of . . . a person whose presence is shown by a party to be essential to the presentation of the party's cause." Id.

This court has previously held that "'[g]iven the special circumstances which arise in a post-conviction proceeding in which a petitioner claims that his trial attorney was ineffective, it is entirely reasonable to conclude that the trial attorney's presence would be essential for the presentation of the state's case.'" Palmer, 108 S.W.3d at 898 (quoting State v. Jerome Brown, No. 03C01-09107-CR-00201, 1992 WL 259357, at *7 (Tenn. Crim. App. at Knoxville, Oct. 7, 1992)). This court has repeatedly concluded that a post-conviction court did not abuse its discretion by allowing trial counsel to remain in the courtroom during a petitioner's testimony. See Shavon Page v. State, No. E2012-00421-CCA-R3-PC, 2013 WL 68904, at *9 (Tenn. Crim. App. at Knoxville, Jan. 7, 2013); Kevin White v. State, No. E2004-02986-CCA-R3-PC, 2005 WL 1981484, at *1 (Tenn. Crim. App. at Knoxville, Aug.

12, 2005). Likewise, we can discern no abuse of discretion in the instant case. Moreover, the petitioner has not articulated what prejudice, if any, he suffered by allowing trial counsel to remain in the courtroom. See Palmer, 108 S.W.3d at 898; El Paso Pitts v. State, No.W2001-01563-CCA-R3-PC, 2002 WL 818252, at *4 (Tenn. Crim. App. at Jackson, Apr. 17, 2002). We conclude that the petitioner is not entitled to relief on this issue.

### III. Conclusion

In sum, we conclude that the petitioner failed to prove his post-conviction claims by clear and convincing evidence and that the post-conviction court did not err by allowing trial counsel to remain in the courtroom during the petitioner's testimony. Accordingly, the judgment of the post-conviction court is affirmed.

_____
NORMA McGEE OGLE, JUDGE